**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 3, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ERNEST LEE THOMAS, JR.,

      Plaintiff-Appellant,

v.

ROGER WERHOLTZ, Secretary of
Corrections; LOUIS E. BRUCE,
Warden, Hutchinson Correctional
Facility; STEVE DECHANT, Deputy
Warden, Hutchinson Correctional
Facility; JOHN TURNER, Deputy
Warden, Hutchinson Correctional
Facility; R. VIERYA, Unit Team
Manager, Hutchinson Correctional
Facility; ROBERT DALE, Unit Team
Manager, Hutchinson Correctional
Facility; B. KIDD, Unit Team
Manager, Hutchinson Correctional
Facility; PATTY JAMES, Unit Team,
Hutchinson Correctional Facility;
(fnu) ELLIS, Shift Lieutenant,
Hutchinson Correctional Facility;
KANSAS DEPARTMENT OF
CORRECTIONS;

      Defendants-Appellees.

No. 07-3214
(D.C. No. 04-CV-3237-CM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

(continued...)

Before **LUCERO**, **HARTZ**, and **HOLMES**, Circuit Judges.

Plaintiff Ernest Lee Thomas, Jr., a prisoner of the State of Kansas appearing pro se, appeals from the district court's orders dismissing one claim and granting summary judgment to the defendant prison officials and correctional officers on all of the other claims in this civil rights action filed pursuant to 42 U.S.C. § 1983. Mr. Thomas also moves for appointment of counsel. We have jurisdiction under 28 U.S.C. § 1291, deny the request for appointed counsel, and affirm.

I.

Mr. Thomas was formerly housed in the East Medium Custody Unit of the Hutchinson Correctional Facility. On May 12, 2004, Mr. Thomas declined to "sign off" on a grievance to indicate that it had been satisfactorily resolved, and returned it, unsigned, to the inbox of defendant Patty James, his unit team counselor. This was not the first time Mr. Thomas had refused to sign off on a grievance. On May 13, Ms. James searched Mr. Thomas's cell and confiscated twelve letters of a sexually explicit nature. On May 14, Mr. Thomas was

*(...continued)
therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

relocated to maximum security housing (without his personal items for the first nineteen hours), and his picture was placed on the lock-box. His job assignment was also changed, which reduced his income from $60.00 a month to $9.00 a month. Mr. Thomas grieved his relocation and then sued in July 2004, asserting that defendants violated his constitutional rights when they retaliated against him for refusing to sign off on the grievance on May 12.

Defendants filed a motion for summary judgment, and Mr. Thomas responded. Defendants offered evidence showing that Ms. James was directed by her supervisor, Robert Dale, to search Mr. Thomas's cell because other inmates had recently complained that he had tried to intimidate them into engaging in sexual relations with him, that he was transferred to maximum security housing because the letters seized from his cell corroborated these complaints, and that his picture was placed on the lock-box because he was labeled a high-profile inmate as a result of this corroboration. Defendants argued that Mr. Thomas had insufficient evidence to support his claims against them.

The district court noted the evidence supporting Mr. Thomas's assertion that he had a good prison record on his unit until May 13, 2004, but granted summary judgment on all aspects of Mr. Thomas's five claims as to all of the defendants, except for Ms. James. *See* R., Doc. 81. The district court explained that Mr. Thomas failed to produce evidence tending to show, or even failed to allege, that any of the other defendants participated in or acquiesced in

Ms. James's actions, established a policy or custom that led to her actions and his alleged injury, or engaged in a conspiracy with her. *Id.* at 8-10. The court clearly and succinctly explained why each defendant, except Ms. James, was entitled to summary judgment. *See id.* at 4-10. The court did not, at this point, grant summary judgment to Ms. James on Mr. Thomas's fourth claim that she violated his First Amendment rights in retaliation for his refusal to sign off on a grievance by taking his personal letters, changing his job classification from the highest rate of pay to the lowest, conspiring with others to have him removed from medium security, and having him transferred to maximum security. *Id.* at 6. The court also did not grant summary judgment to Ms. James on Mr. Thomas's third claim that she violated his First and Fourteenth Amendment rights by taking his personal letters at all. *Id.* at 5-6. The court invited supplemental briefing on whether Mr. Thomas's third claim stated a valid claim. *Id.*

In response to the court's order, Ms. James filed a motion to alter the judgment, and Mr. Thomas responded. The district court then dismissed Mr. Thomas's third claim, that Ms. James violated his First and Fourteenth Amendment rights when she confiscated his letters from his cell. *See id.*, Doc. 90. The court determined that Mr. Thomas's right to *receive* mail was based in the Constitution, but his right to *retain* mail was based in state law, not the Constitution. *Id.* at 2. The court further determined that Mr. Thomas had an adequate post-deprivation remedy under state law (to which he had not availed

himself), and so the taking of his property did not implicate the Due Process Clause. *Id.* at 2-3. The court concluded that Mr. Thomas's claim that Ms. James violated his First Amendment and Fourteenth Amendment rights when she confiscated his letters was not valid, and the court dismissed that claim. *Id.* at 3.

Ms. James later filed a second motion for summary judgment based on newly discovered evidence, and Mr. Thomas responded. The district court considered the untimely motion to prevent manifest injustice and granted summary judgment to Ms. James on the sole remaining claim in the suit. *Id.*, Doc. 122. The court reasoned that

> [t]he uncontroverted evidence indicates that defendant had a legitimate reason for shaking down plaintiff's cell—other inmates alleged that he was engaging in sexually predatory behavior. And the only connection between plaintiff's refusal to sign off on the grievance and his transfer was temporal proximity. That is simply not enough in this case, particularly given the evidence that plaintiff regularly filed grievances and refused to sign off on them.

*Id.* at 4. The court concluded that any inference of retaliation was negated and, in addition, Ms. James had no authority to order Mr. Thomas's transfer in the first place. *Id.* at 4-5.

## II.

We review the grant of summary judgment de novo, applying the same legal standard as the district court under Fed. R. Civ. P. 56(c). *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c). "We review the entire record on summary judgment de novo in the light most favorable to the party opposing summary judgment." *Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir.2000). Mr. Thomas, as the nonmoving party, "must proffer some probative evidence that would be sufficient to sustain [his] burden of persuasion at trial, but []he need not offer conclusive proof to the court in order to withstand summary judgment." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1116 (10th Cir. 2007). "Where different ultimate inferences may properly be drawn, the case is not one for a summary judgment." *Seamons*, 206 F.3d at 1026 (quotation omitted).

Between Mr. Thomas's two briefs, he argues that: (1) defendants violated his right to due process by labeling, branding, and managing him as a sex offender without a hearing, when he has never been convicted of a sex crime; (2) defendants retaliated against him; (3) defendants never established the reliability of their confidential informant; (4) the district court erred by allowing defendants and their counsel to testify without personal knowledge; (5) the district court erred by granting summary judgment to all of the defendants; (6) defendants violated his right to procedural due process by illegally taking one point for a serious misconduct that was not proscribed by rule or policy; (7) defendants violated his First Amendment rights by retaliating against him;

(8) the district court erred by allowing defendants to use his whole prison record to support their motions for summary judgment; (9) defendants violated his right to due process by taking personal letters out of his cell that prison officials had allowed to go through the U.S. mail to him; and (10) his transfer to a grossly more onerous condition of maximum security and the termination of his high-paying job were retaliatory acts done to chill his exercise of his First Amendment right to file grievances about prison officials' misconduct. Defendants argue that because Mr. Thomas did not raise his first issue in the district court, it should be deemed waived. *See Rhine v. Boone*, 182 F.3d 1153, 1154 (10th Cir. 1999).

Based upon our review of the record, we conclude that Mr. Thomas's first issue was adequately raised in the district court. Mr. Thomas initially raised the sexual offender issue—albeit in vague and somewhat inartful terms—in his complaint, noting that certain defendants "excuse [sic] plaintiff of being a sexual predator[]." R., Doc. 1, ¶ 12; *see id.* ¶ 10 (averring that Mr. Thomas's picture was placed on the lock-box "so every guard . . . can view plaintiff as a sexual predator[]"); *id.* ¶ 16 (noting that "the issue whether plaintiff is a sexual predator[] is a matter for the Courts to deceide [sic] rather than low level prison officials"). Moreover, defendant Warden Louis E. Bruce's request that Mr. Thomas be designated and managed as a sex offender was approved by the Director of Sex Offender Management, Rick Fischli, on February 11, 2005, before

defendants filed their first motion for summary judgment on May 26, 2005. *See* Aplt. Br., App. B; R., Doc. 43. Mr. Thomas asserted in his response to that motion that he was "label[ed] and branded as a sexually predatory, sex offender, high profile [inmate] without due process. . . . Inmate had a protected liberty interest in not being labeled a sex offender, and he was thus entitled to a procedural due process before being so labeled." R., Doc. 49, at 5. The district court discussed this allegation in its order granting in part and denying in part defendants' first summary judgment motion. *See id.*, Doc. 81, at 4-5. Therefore, we have considered this issue, as well as the others.

Nevertheless, after a careful review of the district court's orders in light of the parties' briefs, the record, and the governing law, we are convinced that the district court correctly decided this case. We are unpersuaded by Mr. Thomas's assertions of error, and we AFFIRM for substantially the same reasons set forth in the district court's thorough orders.

Mr. Thomas's motion for appointment of counsel is denied. The judgment of the district court is AFFIRMED. We remind Mr. Thomas that he is responsible for making partial payments until the $455.00 filing fee is paid in full.

Entered for the Court


Jerome A. Holmes
Circuit Judge

-8-